J-S07039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS SIDERIO | : | |
| | : | |
| Appellant | : | No. 1324 EDA 2022 |

Appeal from the PCRA Order Entered May 6, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008742-2017

BEFORE:  DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED AUGUST 28, 2023**

Appellant, Thomas Siderio, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his petition brought under the Post-Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court set forth the relevant facts and procedural history of this case as follows:

> At trial, the Commonwealth presented the testimony of Philadelphia police officers Gabriel Gutner, Lamont Fox, William Bengochea, Gregory Giacomelli, and Daniel Cha, Philadelphia police detective Thorsten Lucke, Philadelphia assistant medical examiner Dr. Khalil Wardak, Jalil Caesar, and Steven Busch.  [Appellant] testified on his own behalf. The evidence established the following.
>
> Shortly after midnight, in the early morning of April 1, 2017, [Appellant] arrived at the Uncut Lounge, a club located at 3017 N 22nd Street in Philadelphia, in order to meet his best

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

friend, Daquan Foster, for a night out. (N.T. 11/27/18 at 84-87; N.T. 11/29/18 at 40, 42-43). [Appellant] arrived with his cousin, Joseph Hastings, his girlfriend, Yarissa Rivera, his friend, Brian Johnson, and Johnson's girlfriend. (N.T. 11/29/18 at 40-43, 55-56). While [Appellant] was drinking in the club, Johnson approached him and told him that Foster was in a fight in the back of the club. (N.T. 11/29/18 at 43). [Appellant] attempted to go to the back of the club to see what was going on, but people were pushing and shoving and [Appellant] could not find Foster. (N.T. 11/29/18 at 43). As a result, [Appellant] decided to leave the club, retrieve a gun that he had left in the trunk of his friend's car, and then return to the club to help Foster. (N.T. 11/29/18 at 44, 51-52). When he got to the car he also grabbed a hoody from the car and pulled the hood up over his head in an effort to conceal his identity. (N.T. 11/29/18 at 50, 72-73). [Appellant] did not have a license to carry the firearm. (N.T. 11/29/18 at 50).

By the time [Appellant] got back to the club with his gun, Foster was out of the bar and in the street. (N.T. 11/29/18 at 44-45). When Foster saw [Appellant's] gun, Foster told [Appellant] that the fight was over, and both started running from the scene. (N.T. 11/29/18 at 45). At that time, Steven Busch, a security guard from the club, saw [Appellant] with the gun, and yelled out, "gun" to his partner, Mikal Crump. (N.T. 11/28/18 at 148). Both security guards then began firing at [Appellant]. (N.T. 11/28/18 at 138, 148). One of the bullets they fired at [Appellant] struck and killed Hastings, who was out on the street following [Appellant]. (N.T. 11/28/18 at 92-93, 11/27/18 at 142). At the same time, [Appellant], hearing gunshots, fired his gun, striking a parked car that contained Joseph Hickson, Jalil Caesar, and Clinton Cotton. (N.T. 11/28/18 at 39-43, 11/29/18 at 103). As a result, the car window was shot out and Caesar was shot in the leg. (N.T. 11/28/18 at 41-43). During the exchange of gunfire, [Appellant] was shot in the back. (N.T. 11/29/18 at 48).

(PCRA Court Opinion, filed 6/21/22, at 3) (quoting Trial Court Opinion, filed 9/18/19, at 2-3) (record citation formatting provided).

Procedurally:

On November 30, 2018, following a jury trial before this [c]ourt, [Appellant] was convicted of one count each of carrying a firearm without a license (18 Pa.C.S. § 6106) and carrying a firearm on a public street in Philadelphia (18 Pa.C.S. § 6108). [Appellant] was acquitted of three counts each of attempted murder (18 Pa.C.S. §§ 901(a), 2502) and aggravated assault (18 Pa.C.S. § 2702(a)) regarding … Joseph Hickson, Jalil Caesar, and Clinton Cotton. He was also acquitted of one count of possessing an instrument of crime (18 Pa.C.S. § 907). In addition, the [c]ourt granted [Appellant's] motion for judgment of acquittal for possession of a firearm by a prohibited person (18 Pa.C.S. § 6105). (N.T. 11/30/18 at 99). The case was joined for trial with the charges at Docket Number CP-51-CR-0008741-2017, where [Appellant] was charged with the murder of … Joseph Hastings (18 Pa.C.S. § 2502). [Appellant] was acquitted of all charges regarding Mr. Hastings.

On January 25, 2019, the [c]ourt imposed consecutive sentences of 3½ to 7 years [of] incarceration for the carrying a firearm without a license charge and 2½ to 5 years['] incarceration for the carrying a firearm on a public street in Philadelphia, for an aggregate sentence of 6 to 12 years['] incarceration. [Appellant] filed post-sentence motions, which the [c]ourt denied on May 20, 2019. [Appellant] was represented at trial and through the filing of post-sentence motions by David Walker, Esquire. Gary Server, Esquire, was appointed to represent [Appellant] on appeal. Mr. Server filed an **Anders**[2] brief with the Superior Court, stating that [Appellant's] appeal was frivolous. On October 19, 2020, the Superior Court affirmed [Appellant's] judgment of sentence.

On May 11, 2021, [Appellant] filed a *pro se* [PCRA petition.] On May 24, 2021, Peter Levin, Esquire, was appointed to represent [Appellant], and filed an amended petition on November 20, 2021. The Commonwealth filed a motion to dismiss the petition on March 4, 2022. On March 23, 2022, the Court issued notice pursuant to Pa.R.Crim.P. 907 ("907 Notice") of its intent to dismiss [Appellant's] petition.

_____

[2] **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

[Appellant] filed a response to the 907 Notice on April 12, 2022, which did not raise any new issues. The [PCRA c]ourt dismissed the petition on May 6, 2022.

(PCRA Court Opinion at 1-2) (internal footnote omitted; record citation formatting provided). Appellant filed a timely notice of appeal on May 12, 2022. That same day, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant complied and filed his concise statement on June 2, 2022.

Appellant raises the following issues for our review:

I. Whether the PCRA court was in error in not granting relief on the following issues:

A. Whether Trial counsel was ineffective for failing to preserve a claim challenging Appellant's discretionary sentence?

B. Whether the prosecutor distorted the facts at Appellant's sentencing?

C. Whether Appellant is entitled to a new trial based upon after discovered evidence which would likely change the outcome of his case[?]

II. Whether the PCRA court erred in denying Appellant's PCRA petition without an evidentiary hearing?

(Appellant's Brief at 7) (questions reordered for purposes of disposition).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." *Commonwealth v. Beatty*, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). This Court grants great deference to the factual findings of

the PCRA court if the record contains any support for those findings. ***Commonwealth v. Dozier***, 208 A.3d 1101, 1103 (Pa.Super. 2019). "[W]e review the court's legal conclusions *de novo*." ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021). Further, "we must defer to the PCRA court's findings of fact and credibility determinations, which are supported by the record." ***Commonwealth v. Diaz***, 183 A.3d 417, 421 (Pa.Super. 2018), *aff'd*, 657 Pa. 618, 226 A.3d 995 (2020).

In his first sub-issue, Appellant contends that trial counsel was ineffective for failing to preserve a claim challenging the discretionary aspects of Appellant's sentence. Specifically, Appellant insists that his sentence of 2½ to 5 years' imprisonment for carrying a firearm in public in Philadelphia was an upward departure from the sentencing guidelines. Appellant maintains that counsel had no reasonable justification for failing to preserve the issue for appeal and, if counsel had preserved it, this Court could have reviewed the sentence and granted relief. Appellant concludes that counsel's failure to preserve his sentencing claim for appeal constitutes ineffective assistance, and this Court must grant relief. We disagree.

"Counsel is presumed to have rendered effective assistance." ***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence,

ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Commonwealth v. Chambers*, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002) (citation omitted).

To succeed on an ineffectiveness claim for failure to preserve a challenge to the discretionary aspects of sentencing, the petitioner must demonstrate the underlying sentencing claim entitles the petitioner to relief. *Commonwealth v. Jones*, 942 A.2d 903 (Pa.Super. 2008), *appeal denied*, 598 Pa. 764, 956 A.2d 433 (2008). *See also Commonwealth v. Reaves*,

592 Pa. 134, 923 A.2d 1119 (2007) (providing claim of ineffectiveness for failure to preserve discretionary sentencing issue requires showing of reasonable probability that sentencing court would have imposed lesser sentence).

This Court will not disturb the judgment of the sentencing court absent an abuse of discretion. *Commonwealth v. Fullin*, 892 A.2d 843 (Pa.Super. 2006).

> [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, …: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision.

*Commonwealth v. Walls*, 592 Pa. 557, 564-65, 926 A.2d 957, 961-62

(2007) (internal quotation marks, footnotes, and citations omitted). "If the court imposes a sentence outside of the sentencing guidelines, it must provide a written statement setting forth the reasons for the deviation and the failure to do so is grounds for resentencing." *Id.* at 566-67, 926 A.2d at 962-63.

Pursuant to Section 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). *See also Commonwealth v. Fowler*, 893 A.2d 758 (Pa.Super. 2006) (stating where court had benefit of pre-sentence investigation ("PSI") report, we can presume it was aware of relevant information regarding defendant's character and weighed those considerations along with mitigating statutory factors).

Here, the trial court explained its sentencing rationale as follows:

> Here, the [c]ourt's sentence for carrying a firearm without a license was in the standard range of the Sentencing Guidelines. While [Appellant's] sentence for carrying a firearm on a public street in Philadelphia was an upward departure from the guidelines, the sentence was well-justified for the reasons explained by the [c]ourt on the record during the sentencing hearing. Moreover, the record demonstrates that the [c]ourt's aggregate sentence was completely reasonable.
>
> In fashioning an appropriate sentence, the [c]ourt explicitly considered the following: everything presented throughout the history of the case; [Appellant's PSI] report and mental health evaluation; the investigation into [Appellant's] prior record score; all of the submissions from defense counsel regarding sentencing; the sentencing guidelines;

[Appellant's] rehabilitative needs; the need for the protection of the public; and the gravity of the offense in relation to the impact on the victim and on the community. In particular, the [c]ourt first noted that [Appellant's] prior record score of four understated his degree of criminality. [Appellant] was 25 years old and had been arrested 22 times. While the [c]ourt acknowledged that many of these arrests did not result in convictions, this "very large and actually extraordinary number of arrests" may appropriately be considered at sentencing. [S]*ee Commonwealth v. Craft*, 450 A.2d 1021, 1024 (Pa.Super. 1982) (in imposing a sentence, a court may consider prior arrests as long as the court does not give undue weight to those arrests or treat those arrests as prior criminal conduct). Along with [Appellant's] 22 arrests, [Appellant] also had 13 violations of probation, and was on probation at the time of the incident related to these charges. As the [c]ourt noted, [Appellant's] numerous probation violations, while not reflected in the prior record score, clearly demonstrated a pattern of general disregard for the rule of law. The [c]ourt also noted that [Appellant's] willingness to unlawfully possess a firearm while on probation supervision was an important aggravating factor supporting a sentence outside of the guidelines.

Moreover, [Appellant's] conduct giving rise to his unlawful possession of a firearm on the night of the incident was not typical behavior contemplated by the Guidelines for possession of a firearm. Knowing that he was on probation, [Appellant] stashed an unlicensed firearm in the trunk of his friend's car for ready access during a night out at a club. When [Appellant] believed that his friend might have been in a bar fight, [Appellant] readily retrieved the weapon and returned to the club, ready to go inside to and use it in the fight. The [c]ourt fully recognizes that [Appellant] never entered the bar with the weapon and was acquitted of the murder, attempted murder and aggravated assault charges. However, it is not contested that his unlawful possession of a gun that evening started a chain of events that led to [Appellant's] cousin being shot and killed by a security guard, and led to an innocent bystander in a parked car being shot. In addition, as the [c]ourt noted, consecutive sentences were appropriate in order to achieve an aggregate sentence that would be fair under the

circumstances.

Finally, there is no merit to [Appellant's] argument that the [c]ourt failed to consider the mitigating evidence presented at sentencing. The [c]ourt explicitly reviewed and noted all of the substantial mitigating evidence submitted by the defense, and weighed and considered it in arriving at an appropriate sentence.

Accordingly, the record establishes that there were compelling reasons for the departure above the Guidelines and the consecutive sentences in this case, and that the aggregate sentence was fully commensurate with [Appellant's] criminal conduct. As a result, the sentence was reasonable and should not be disturbed.

(Trial Court Opinion, filed 9/18/19, at 5-7) (internal footnote and record citations omitted).[3]

In light of the broad discretion afforded to sentencing courts and the court's thorough explanation of its rationale for the sentence imposed, we cannot say that Appellant would have been entitled to sentencing relief on appeal had trial counsel preserved such a challenge for appellate review. *See Fullin, supra*. *See also Reaves, supra*; *Jones, supra*. The record makes clear the trial court considered Appellant's prior record, the circumstances of the altercation, and the impact Appellant's actions had on the victims. Additionally, the court had the benefit of a PSI report, so we can presume the court was aware of and considered the relevant mitigating factors. *See*

_____

[3] The PCRA court similarly referenced the September 18, 2019 trial court opinion for its explanation as to the reasons for the sentence imposed. (*See* PCRA Court Opinion at 5).

*Fowler, supra*. Further, the court adequately explained on the record why it chose to depart from the sentencing guidelines. *See Walls, supra*. Thus, we agree with the PCRA court that Appellant failed to establish that he was prejudiced by counsel's failure to preserve a challenge to the discretionary aspects of the sentencing, and Appellant's first sub-issue merits no relief. *See Spotz, supra*.

In his second sub-issue, Appellant claims the Commonwealth "distorted the facts" at Appellant's sentencing and made material misrepresentations concerning Appellant's criminal history. (*See* Appellant's Brief at 20). However, as this claim could have been raised in Appellant's direct appeal, but was not, we conclude that Appellant waived the claim. *See* 42 Pa.C.S.A. § 9544(b) (stating "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state postconviction proceeding"). Thus, Appellant waived his second sub-issue.[4]

In his third sub-issue, Appellant argues that he recently discovered evidence of Detective James Pitts' police misconduct concerning a pattern and practice of falsifying evidence and using coercive interrogation tactics.

---

[4] Moreover, Appellant failed to develop this one paragraph argument with citation to pertinent authority, and failed to include citations to the certified record where the alleged misrepresentations were made. *See* Pa.R.A.P. 2119(a)-(c). Accordingly, Appellant's second sub-issue is waived on this ground as well. *See* Pa.R.A.P. 2101.

Appellant asserts that information regarding Detective Pitts' misconduct was not available at the time of trial, but if it had been, Appellant's case could have been dismissed. (**See** Appellant's Brief at 22). In support of this claim, Appellant highlights that Detective Pitts (1) spoke to Daquan Foster's mother, who identified Appellant in a security video; (2) probed Appellant for information outside of the probation officer's office, without his attorney, before arresting him on gun charges; and (3) intimidated and coerced Appellant's grandfather for information about the case. Appellant insists that Detective Pitts' testimony was instrumental at the preliminary hearing and formed the basis for the charges against Appellant. Although Appellant acknowledges that he admitted at trial to possessing the guns and that he had no license to carry a firearm, Appellant claims that "he would never have been arrested on any of the charges, including the weapons charges, but for the misconduct of Detective Pitts." (**Id.** at 25). Appellant submits that based on Detective Pitts' misconduct in other cases, "one cannot be certain that Detective Pitts did not engage in similar misconduct with the evidence of this case…." (**Id.** at 24). Appellant concludes that Detective Pitts' misconduct constitutes after-discovered evidence, and this Court must grant relief. We disagree.

To prevail on an after-discovered evidence claim, an appellant must prove: (1) the new evidence could not have been obtained at or prior to trial through reasonable diligence; (2) the new evidence is not merely

corroborative or cumulative of evidence that was admitted at trial; (3) the new evidence is not being used solely to impeach the credibility of a witness; and (4) the new evidence would likely result in a different verdict. *Commonwealth v. Small*, 647 Pa. 423, 442, 189 A.3d 961, 972 (2018). All four of these requirements must be proved; if an appellant fails to establish any one of these, the after-discovered evidence claim fails. *Id.* at 442, 189 A.3d at 972. In determining whether introduction of the proffered new evidence would likely result in a different verdict, the PCRA court "should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa.Super. 2010), *appeal denied*, 609 Pa. 687, 14 A.3d 826 (2010).

Here, the PCRA court rejected Appellant's claim of after-discovered evidence, reasoning:

> Assuming *arguendo* that all of [Appellant's] allegations regarding Detective Pitts are true, [Appellant] would still not be entitled to relief. [Appellant] was only convicted of one count each of carrying a firearm without a license … and carrying a firearm on a public street in Philadelphia[.] When [Appellant] testified at trial, he readily admitted that he committed both of these crimes. In particular, he acknowledged that he drove in a car with his gun, that he removed his gun from the car, hid it under his body, carried it in the street and fired it. (N.T. 11/29/18, at 44-46, 48, 50, 52, 62-63, 69-72, 74-75, 98, 100-102, 104, 110-112, 116-117). He also acknowledged that he had no license to carry the gun. (*Id.* at 69). This was enough to prove both of the firearms violations independent of all of the Commonwealth's evidence.

(PCRA Court Opinion at 8) (record citation formatting provided; internal footnote omitted).

We agree with the PCRA court that Appellant has failed to show his proffered after-discovered evidence of Detective Pitts' misconduct in other cases would likely result in a different verdict in this case. Although Appellant alleges that based on evidence of Detective Pitts' misconduct in other cases, Detective Pitts might have engaged in similar misconduct in this case, Appellant has produced no evidence whatsoever to substantiate this claim.

Further, our review of the record shows that Detective Pitts assisted in the investigation of this case by taking several witness statements. At the preliminary hearing, Detective Pitts did not testify, but the parties stipulated that his testimony would be that he interviewed three witnesses, in addition to the two security guards, and they all identified themselves in the surveillance video. The Commonwealth introduced the stipulated testimony at the preliminary hearing to identify people in the video. (*See* N.T. Hearing, 10/10/17, at 19-20). Based on other evidence presented at the hearing, the trial court identified Appellant as the individual in the hoodie who was firing shots.[5] (*Id.* at 25). Although Appellant asserts that Detective Pitts' preliminary hearing testimony "was tainted by a likelihood of habitual police misconduct," Appellant has not cited to which parts of the stipulated testimony

---

[5] The court heard testimony from another officer, who identified Appellant in the video, and the judge also could see that it was Appellant in the video.

- 15 -

he is referring. (**See** PCRA Petition, filed 11/10/21, at 20). On this record, we see nothing to support Appellant's speculative argument that Detective Pitts committed misconduct in this case which formed the basis of Appellant's arrest. **See Commonwealth v. Brown**, 134 A.3d 1097, 1109 (Pa.Super. 2016), *appeal denied*, 636 Pa. 657, 145 A.3d 161 (2016) (holding appellant was not entitled to new trial where evidence offered against Detective Pitts was not specific to appellant's case; although appellant sought to subpoena testimony of individuals who would testify that Detective Pitts used aggressive and violent tactics to coerce their statements in other murder cases, none of those witnesses could provide any new evidence concerning Detective Pitts' misconduct in this case and such testimony would be used solely to impeach Detective Pitts' testimony; denying appellant's request for evidentiary hearing on his proposed after-discovered evidence). Thus, Appellant cannot succeed on his third sub-issue.

In his final issue, Appellant claims the PCRA court erred when it denied his request for relief without an evidentiary hearing. Appellant concedes that the right to an evidentiary hearing is not absolute, but he suggests that there were genuine issues of material fact in controversy and the PCRA court should have granted an evidentiary hearing to provide the forum to demonstrate such "manifest injustice." (Appellant's Brief at 16-17). Appellant concludes this Court must vacate and remand for an evidentiary hearing. We disagree.

A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to relief, and no purpose would be served by any further proceedings. *Commonwealth v. Wah*, 42 A.3d 335 (Pa.Super. 2012). "A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Commonwealth v. Smith*, 121 A.3d 1049, 1052 (Pa.Super. 2015), *appeal denied*, 635 Pa. 763, 136 A.3d 981 (2016) (quoting *Commonwealth v. Derrickson*, 923 A.2d 466, 468 (Pa.Super. 2007), *appeal denied*, 594 Pa. 685, 934 A.2d 72 (2007)).

On this record, Appellant has failed to demonstrate that any of the claims presented to the PCRA court raised a genuine issue concerning any material fact. *See Smith, supra*; *Wah, supra*. Therefore, the PCRA court did not err when it denied Appellant's claims without an evidentiary hearing. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/28/2023</u>